**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexandra Herrera, | No. CV-25-01360-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

    Plaintiffs Alexandra Herrera, her daughter "A.A.T.," and her son "A.T." allege Phoenix police officers used excessive force and unlawfully seized them, violating their rights under the Fourth and Fourteenth Amendments. (Doc. 15 at 5-7, 14.) Plaintiffs bring two claims: one against individual-officer defendants Alexander Van Meter, John Doe Sanchez, and John Doe Feher (Doc. 15 at 14) and a second against defendant City of Phoenix alleging the officers acted pursuant to a policy, practice, or custom (Doc. 15 at 15-16). All defendants moved to dismiss the complaint in its entirety, but only portions of the complaint are subject to dismissal.

**I.   Plaintiffs' Factual Allegations**

    In April 2023, Herrera was walking home from a neighborhood gathering with her then-ten-month-old daughter when she saw her then-two-year-old son standing with a "random stranger" and a non-party Phoenix police officer. (Doc. 15 at 4.) Defendant officers Van Meter and Sanchez arrived and transported Herrera and her two children to their apartment complex. Plaintiffs went to Herrera's sister's apartment, on the floor

beneath Herrera's. (Doc. 15 at 4.) Van Meter, Sanchez, and "Officer Parra" followed the plaintiffs and entered that apartment "under the guise of a welfare check." (Doc. 15 at 4.) Hererra, holding her children, then left the apartment and walked away from the officers. (Doc. 15 at 4-5.) Sanchez yelled at her to stop and when Herrera did not, Sanchez and Van Meter followed her into an enclosed alley behind the apartment complex. (Doc. 15 at 5.)

Once in this "dark corridor," Van Meter grabbed Herrera and instructed that she let go of her children, then struck Herrera in the face. (Doc. 15 at 5.) Van Meter "forced" Herrera to release A.T.T. to Sanchez. (Doc. 15 at 5.) While Herrera still held A.T., Van Meter threw Herrera to the ground, where he "twisted her head until she released" A.T. (Doc. 15 at 5.) Subsequently, while Herrera was lying face-down on the ground, Van Meter pressed his knee and body weight into Herrera's back and handcuffed her, then "tore off" her shirt, leaving her in a bra and Spandex bicycling shorts. (Doc. 15 at 5.) While this happened, Sanchez held Herrera's children, who were screaming. (Doc. 15 at 5-6.)

Van Meter placed Herrera in the police car. (Doc. 15 at 6.) At that point defendant Feher "arrived on scene and yelled at [Herrera] to calm down and he would remove her handcuffs." (Doc. 15 at 6.) It is unclear if the cuffs were actually removed but for the next three hours, Herrera remained in the police car while the officers held her children. (Doc. 15 at 6.) The officers did not release Herrera until her uncle arrived on the scene. (Doc. 15 at 6.) Herrera alleges she "was never arrested, never *Mirandized*, did not receive a citation nor a ticket, and only Defendant Van Meter was willing to provide his badge number." (Doc. 15 at 6.)

Plaintiffs allege Herrera suffered significant physical injuries from the events and all three plaintiffs suffered emotional trauma. (Doc. 15 at 6, 13-14.) Plaintiffs filed this suit naming as defendants Sanchez, Van Meter, and Feher, as well as the City of Phoenix.[1] Plaintiffs allege the City of Phoenix ratified the officers' unconstitutional actions through its policies, orders, and customs, and through its failure to train officers. (Doc. 15 at 7.) To

---

[1] Plaintiffs also named as defendants the spouses of the three officers. (Doc. 15 at 3.) Plaintiffs did not serve the spouses and, on September 9, 2025, they were dismissed. (Doc. 35.)

support these allegations, plaintiffs allege the Phoenix Police Department has a history of using excessive force without any meaningful attempt to de-escalate—particularly against minorities—as documented in a past U.S. Department of Justice investigation (Doc. 15 at 8-11) and subsequent public incidents (Doc. 15 at 12-13). The officers and the City of Phoenix appeared through the same counsel and filed motions to dismiss and to strike portions of the complaint defendants believe were "added solely to disparage and vilify" them. (Doc. 22 at 1.)

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III.     Analysis

The complaint does not clearly identify which facts and legal theories are being asserted by which plaintiff against which individual-officer defendant. Based on the briefing in connection with the motion to dismiss, it appears all three plaintiffs are pursuing a claim for excessive force based on the alleged actions immediately before and after Van Meter handcuffed Herrera. Herrera is also alleging a claim for unreasonable seizure based on the length of her detention in the police vehicle. A.T.T. and A.T. appear to be alleging claims for unreasonable seizure based on being held by officers while Herrera was in the police vehicle. Finally, all three plaintiffs are alleging a claim against the City of Phoenix based on its alleged policies, customs, and practices regarding "use of force." (Doc. 15 at

16.)

## A. Excessive Force

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (citations omitted). This is a fact-specific inquiry asking whether the totality of the circumstances justify the level of force used; courts particularly weigh "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Taking all allegations in plaintiffs' favor, Herrera has alleged a plausible excessive force claim against Sanchez and Van Meter, but not against Feher. A.A.T. and A.T. have not alleged a plausible excessive force claim against any defendant.

### 1. Herrera's Excessive Force Claim

The plaintiffs allege excessive force based on the events which occurred after Herrera left her sister's apartment. Plaintiffs allege Van Meter grabbed Herrera and struck her in the face while she held A.A.T. and A.T. (Doc. 15 at 5.) Herrera was forced to release A.A.T. and subsequently, "without any warning," Van Meter threw Herrera (and A.T.) to the ground and twisted Herrera's head until she released A.T. (Doc. 15 at 5.) While Herrera was prone on the ground, Van Meter pressed his full body weight into her back with his knee and placed her in handcuffs—after which, "for no reason whatsoever," he tore off her shirt. (Doc. 15 at 5.) While this occurred, Sanchez "stood by idly" holding A.A.T. and A.T. (Doc. 15 at 5-6.) Herrera, still handcuffed, was placed in the back of the police car, and only after that did Feher arrive on scene. (Doc. 15 at 6.)

The first factor in an excessive force analysis, the severity of the crime at issue, weighs in favor of Herrera. Defendants argue there was probable cause to believe Herrera committed felony child abuse because the police found two-year-old A.T. with a stranger

at around 10 p.m. near the neighborhood gathering Herrera had been attending. (Doc. 23 at 5). But Herrera was not then (or ever) charged with a crime or cited in any way. (Doc. 15 at 6.) That fact weighs against finding the alleged crime—undoubtedly serious in many cases—to be severe here. *Nelson v. City of Davis*, 685 F.3d 867, 879 n.5 (9th Cir. 2012) (fact that plaintiff "did not commit any chargeable offense, or at most, a misdemeanor, weighs heavily against the defendants' use of force"). So does the fact that the alleged abuse was nonviolent, more akin to neglect, as opposed to Herrera having actively caused serious physical injury to A.T. *See Smith v. City of Hemet*, 394 F.3d 689, 693, 702-03 (9th Cir. 2005) (en banc) (despite "seriousness and reprehensibility" of domestic violence in general, examining factual circumstances to conclude plaintiff was not "a particularly dangerous criminal" nor that "his offense was especially egregious"). And case law makes clear using force is no more permissible when a crime is classified as a felony versus a misdemeanor, particularly when that felony is nonviolent. *See Garner*, 471 U.S. at 14 ("numerous misdemeanors involve conduct more dangerous than many felonies.").

Second—and most importantly to the excessive force analysis—Herrera does not appear to have posed an immediate threat to the safety of the officers or her children. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). "Defendants do not claim Alexandra was a threat to *their* safety" (Doc. 34 at 4), a reasonable concession given she alleges she was unarmed and nonviolent. They do argue she was a threat to her children because earlier in the evening, her son had been found alone and she was "wander[ing] off with her children" into an enclosed space attached to her apartment complex. (Doc. 34 at 4.) But the facts as pleaded do not indicate an immediate threat to Herrera's children such that this level of force (or perhaps any level of force) was necessary. Herrera did not pose "an immediate threat to anyone's safety" because she was unarmed, "in plain view of the officers," and any possibility of further abusing her children through neglect was negated when they were in her arms. *See Smith*, 394 F.3d at 702. Herrera walked away from the officers into a fenced area behind her apartment building (Doc. 15 at 5)—when the officers followed, there was nowhere else she could take her children, nor was she intoxicated or

otherwise immediately dangerous to them. Defendants do not identify an exigency that justifies Van Meter striking Herrera in the face, throwing her to the ground while she held her child, and twisting her head. (Doc. 15 at 5-6.) And she certainly posed no danger to her children once she was prone and the children were removed from her arms—yet Van Meter then allegedly pressed his body weight into her back and ripped off her shirt. (Doc. 15 at 5.) Even individuals who were armed and violently resisting arrest do not present an immediate threat when they are lying on the ground or otherwise in positions where they cannot "easily harm anyone or flee." *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017); *see also Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) ("The use of a force against a person who is helpless or has been subdued is constitutionally prohibited."). The force alleged exceeded any immediate threat to the officers or Herrera's children.

Third, Herrera was not actively resisting arrest. In excessive force analyses, resistance "runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Bryan*, 630 F.3d at 830. Herrera was on the passive side of the spectrum. Assuming (as alleged) she was resisting by "fleeing" from a welfare check after officers told her to stop, her sole act of resistance was disobeying the orders to stop. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1159, 1168 (9th Cir. 2011) (no active resistance where suspect moved away from officers and then disobeyed orders). And considering she wandered off to an enclosed area (Doc. 15 at 5), it would be dubious to construe her walking away as an attempt to flee. *See Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1205 (9th Cir. 2000), *vacated and remanded on other grounds*, 534 U.S. 801 (2001) (force excessive in part because suspects "could not evade arrest by flight"). As pleaded, she was at most passively resisting commands and did not actively resist arrest. *Graham*, 490 U.S. at 396.

In weighing the competing governmental and individual interests, the need for force lies "at the heart of the *Graham* factors." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (citation omitted). The complaint alleges facts suggesting the police had

only a minimal interest in using force against Herrera because she was unarmed, holding her children, and walking away from a welfare check into an area from which there was no risk of escape. Though she did not comply with orders to put down her children and stop walking, "[t]here was no immediate need to subdue" her. *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001). The complaint thus plausibly pleads that the level of force exerted by Van Meter against Herrera was excessive. And because the complaint also pleads Sanchez witnessed the alleged excessive force but did not intervene verbally or physically (Doc. 15 at 5-6), the facts suggest he could be liable for excessive force by failing to fulfill his duty to intercede when a fellow officer violates a person's constitutional rights (Doc. 28 at 10-12). *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *see also United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994), *rev'd in part on other grounds*, 518 U.S. 81 (1996) ("the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows").

However, Herrera has no excessive force claim against Feher because he was not present when Van Meter allegedly used excessive force against her and instead only arrived once she was in the police car (Doc. 15 at 6). *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (plaintiff making § 1983 claim against an officer must allege facts showing officer "was personally involved in the deprivation of his civil rights.") The excessive force claim against him is dismissed. Leave to amend this claim against Feher is denied because any facts Herrera could allege to cure the deficiency would be inconsistent with the complaint now challenged. *See Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023).

### 2. A.T.T. and A.T. Do Not Have Excessive Force Claims

The complaint does not allege excessive force (or any force) was used against the children. Though Herrera was holding A.T. when Van Meter threw her to the ground, the complaint does not specifically allege any force was leveraged against him or his sister during this time or the rest of the night. (Doc. 15 at 5.) Claims on their behalf alleging excessive force are dismissed with leave to amend.

### B. Unreasonable Seizure

Herrera also appears to allege an "unreasonable seizure" theory within Count One. A person is seized "when the officer by means of physical force or show of authority terminates or restrains [the person's] freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007). To determine the constitutionality of a seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner*, 471 U.S. at 8 (citations omitted). A seizure's reasonableness depends not only on when it is made, but also how it is carried out: even if lawful at its inception, a seizure "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Id.*; *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (seizure prolonged beyond the time reasonably required to complete the mission justifying it may violate Fourth Amendment). The crux of Herrera's claim therefore turns not on whether there was probable cause to seize her but on how that seizure was conducted.

#### 1. Herrera's Unreasonable Seizure

Herrera's seizure appears to be an arrest: she was tackled and handcuffed by Van Meter and "then placed in the back of the Phoenix Police cruiser" for three hours until her uncle arrived on the scene (Doc. 15 at 5-6). *See Manzanares v. Higdon*, 575 F.3d 1135, 1148-49 (10th Cir. 2009) (three-hour, handcuffed detention deemed arrest rather than investigative detention in large part due to duration).

Defendants do not address the reasonableness of the three-hour detention and instead focus on whether they had probable cause to arrest Herrera, appearing to argue that if probable cause to arrest existed, it would be lawful to detain her in a police car indefinitely. But as discussed above, a seizure's lawfulness depends not only on whether custody is justified, but also on how the seizure takes place and how long it lasts. *Caballes*, 543 U.S. at 407. As pleaded, Herrera was not charged with any crime and was instead released seemingly as soon as a family member arrived (Doc. 15 at 5-6), undermining an

1  argument that the officers were investigating during the entirety of those three hours.
2  Taking all facts pleaded in Herrera's favor, the complaint may therefore plausibly allege
3  unlawful seizure. But as discussed below, this potential constitutional violation is not
4  sufficiently clearly established to defeat qualified immunity.

### 2. A.T.T. and A.T. Do Not State Unlawful Seizure Claims

There was no unlawful seizure of the children. The children were held incident to their mother's seizure only for their safety. *See Tower v. Leslie-Brown*, 326 F.3d 290, 297 (1st Cir. 2003) (reasonable that police intruded in home to watch children left unattended by parent's arrest); *Oakry v. City of Tempe*, 629 F. Supp. 3d 974, 983 (D. Ariz. 2022) (warrantless entry into apartment was justified where children were left alone inside apartment with individual who had just assaulted their mother); *Barnes v. Maryland Nat. Cap. Park & Plan. Comm'n*, 932 F. Supp. 691, 695–96 (D. Md. 1996) (reasonable that police held child during parent's detainment and subsequently while parent purchased safety seat). And because a reasonable officer could consider holding children while their mother is in custody to be legal and necessary, the officers (mainly Sanchez, since he allegedly primarily held the children) would be entitled to qualified immunity even if the children had a claim. *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). The claim for unlawful seizure on the children's behalf is therefore dismissed without leave to amend.

### C. Qualified Immunity

Government officials are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether qualified immunity applies at the motion-to-dismiss stage, the court must determine whether the facts alleged show the defendant's conduct violated a constitutional right which was clearly established at the time of the violation, "in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009); *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023). "[T]he contours of the right must be sufficiently clear that at the time

the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (citations omitted). But a plaintiff's claims may proceed if the complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)). It is the plaintiff's burden to show the right was clearly established at time of the violation. *Romero*, 931 F.2d at 627.

Plaintiffs argue the court should reject qualified immunity for all three officers. Conducting an officer-by-officer analysis of each theory, the court disagrees: qualified immunity is justified for all defendants as to the unlawful seizure claim, but not as to Van Meter and Sanchez on the excessive force theory.

**1. Van Meter**

Plaintiffs allege Van Meter violated Herrera's right to be free from the use of excessive force when he struck Herrera in the face, threw her to the ground, twisted her head, pressed his knee into her back, and tore off her shirt in the face of her passive resistance to police orders to stop walking and put down her children. (Doc. 15 at 5-8.) As set forth above, Herrera has pleaded a violation of a constitutional right. The question for purposes of qualified immunity is whether the allegedly-infringed right was clearly established at the time of the incident in April 2023.

The right to be free from the use of force for mere passive resistance is clearly established for the purpose of qualified immunity analyses where the force includes forcible tackling, twisting limbs or a head, blows to the face, and ripping off clothes, as Herrera alleges. *See Nelson*, 685 F.3d at 881 (collecting cases establishing "failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"); *see also Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (no qualified immunity where plaintiff refused to follow orders and officers threw him to the ground and twisted his limbs); *Gravelet-*

*Blondin v. Shelton*, 728 F.3d 1086, 1093-94 (9th Cir. 2013) (no qualified immunity where plaintiff did not respond to officers' orders and officers tased him in "dart mode"); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011) (no qualified immunity where plaintiff disobeyed orders and moved away from officer and officer used pepper spray and baton to subdue him).

Defendants argue a reasonable officer "would believe that they were entitled to seize [Herrera] to prevent her from fleeing" from a welfare check with her children and "use some degree of force" in doing so. (Doc. 23 at 11-13.) Although "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion," *Graham*, 490 U.S. at 396, the facts in Herrera's complaint preclude a finding that the level of force used to effectuate her arrest was justified (at least at the motion-to-dismiss stage). Notably, as pleaded, Van Meter apparently did not warn Herrera she would be arrested if she continued ignoring orders. *Gravelet-Blondin*, 728 F.3d at 1092-93 (no qualified immunity in part because plaintiff "was not given any warning" of imminent use of force). Herrera walked away from the officers to an enclosed area from which there was no risk of flight. *Headwaters Forest*, 240 F.3d at 1199 (no qualified immunity in part because although they disobeyed orders, plaintiffs could not "evade arrest by flight"). And Van Meter continued to use force after Herrera was subdued by ripping off her shirt. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1170 (9th Cir. 2013) (no qualified immunity where force was exerted after suspect was already "adequately subdued"). In short, it was clearly established at the time of these events that an officer could not use the non-trivial level of force Herrera alleges to seize a passively-resisting subject who could not flee. Qualified immunity does not attach to Van Meter's use of force against Herrera.

The same does not hold true for the claim that Van Meter unlawfully seized Herrera, because a reasonable officer could believe there was probable cause to arrest her and that the length of the seizure was lawful. Herrera's unlawful seizure claim is premised upon being detained for three hours in the back of the police car, with no resulting citation or charges. Defendants claim there was probable cause Herrera had committed a criminal

offense because her child was wandering alone at night, Herrera fled from a welfare check, and she resisted officers' orders (Doc. 23 at 11). It may be true that Herrera committed an offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (officer may arrest given "probable cause to believe that an individual has committed even a very minor criminal offense in his presence"). But more importantly, plaintiffs do not contest that probable cause existed here (*see* Doc. 28 at 13-14). *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (simplified)).

Plaintiffs are correct that "whether Alexandra's seizure was based on probable cause is not a dispositive factor in her unreasonable seizure claim." (Doc. 28 at 5.) But it *is* a dispositive factor in deciding whether the officers are entitled to qualified immunity for that claim in these particular circumstances, because the existence of probable cause meant it was not clearly established that a three-hour detention was unlawful. To avoid qualified immunity, "existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (citation omitted); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (qualified immunity applied where officer made reasonable mistake in concluding probable cause existed). It is not beyond debate that detaining Herrera was unlawful because an on-the-scene probable cause assessment permits full-scale arrests with longer periods of detention and more "extended restraint[s] of liberty" than three hours in a police car. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (a judicial determination of probable cause within 48 hours of warrantless arrest will "as a general matter" comply with the Fourth Amendment's promptness requirement). So a reasonable officer with probable cause to make an arrest could believe a three-hour detention is lawful, even if the suspect is not eventually charged with a crime and even if the officer was reasonably mistaken about the existence of probable cause.

Accordingly, Van Meter has qualified immunity for the unlawful seizure claim.

### 2. Sanchez

Next, plaintiffs allege qualified immunity should not attach to Sanchez's conduct during the use of force and unreasonable seizure. Officers have a "duty to intercede" when fellow officers violate a person's constitutional rights and may be held liable for the underlying constitutional violation just like the officer who actively violated the right. *Cunningham*, 229 F.3d at 1289; *see also Koon*, 34 F.3d at 1447 (officer who failed to intercede during colleagues' unreasonable force "would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights"). An officer has an opportunity to intercede only if he is aware of the constitutional violation as it occurs and has a realistic opportunity to intervene. *Stephenson v. California*, 761 F. Supp. 3d 1242, 1265, 1270-71 (C.D. Cal. 2025), *appeal dismissed sub nom. Stephenson v. McKee*, No. 25-336, 2025 WL 1143493 (9th Cir. Apr. 8, 2025). Case-specific facts are required to determine whether a realistic opportunity to intervene existed. *Id.* at 1270-71; *see Tobias v. Arteaga*, 996 F.3d 571, 583-84 (9th Cir. 2021).

Plaintiffs sufficiently pleaded Sanchez's personal involvement and failure to intercede such that qualified immunity does not attach to the excessive force claim at the motion-to-dismiss stage. Sanchez was present for the entire encounter, holding the children and providing backup. (Doc. 15 at 2-7.) Under the facts alleged, he may have had a realistic opportunity to intervene, for instance, after Herrera was struck or once Herrera was on the ground without her child (before Van Meter tore off her shirt). (Doc. 15 at 5.) A reasonable officer would recognize this sequence of events as an excessive use of force, particularly any force used after Herrera was immobilized. *See Stephenson*, 761 F. Supp. 3d at 1265. Taking all facts as true, plaintiffs have sufficiently pleaded a plausible claim that Sanchez had a duty to intercede and that "[t]here is a reasonable likelihood that [he] would not be entitled to qualified immunity." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418, 421 (9th Cir. 2003); *see Tobias*, 996 F.3d at 583-84.

However, like Van Meter, Sanchez is entitled to qualified immunity on plaintiffs' unlawful seizure claim. Without more, it was not clearly established that an officer may

not detain for three hours a person whom officers had probable cause to believe committed a crime.

### 3. Feher

A plaintiff making a § 1983 claim against an officer must allege facts showing the officer "was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. Plaintiffs did not do so to support any claim against Feher, let alone to defeat qualified immunity for his actions.

The complaint alleges Feher arrived on scene after Herrera had suffered the alleged excessive force and after she had been seized. (Doc. 15 at 7.) As discussed, he did not have the opportunity to intercede in the use of force and any claim against him on this basis is dismissed. *See Cunningham*, 229 F.3d 1271 at 1289-90. Plaintiffs also allege Feher had the opportunity to intervene in Herrera's allegedly unreasonable three-hour detention "but failed to do so." (Doc. 28 at 12.) Although officers may be liable for failure to intercede in an ongoing constitutional violation, *see Tobias*, 996 F.3d at 584, a reasonable officer could have approached the scene of an alleged suspect detained in a police car for three hours without believing the seizure was illegal, having missed the context and information that led to the seizure. Therefore, qualified immunity protects Feher on the only remaining claim for which Herrera plausibly pleaded his personal involvement. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

All claims against Feher are therefore dismissed and Herrera may amend only the claims against him relating to unreasonable seizure.

### D. *Monell* Claim

"A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) (no *respondeat superior* liability when municipality employs tortfeasor). However, a municipality may be held liable for its employees' constitutional violations under § 1983 in certain circumstances. *Id.* A *Monell* claim may be proved in multiple ways, including

(1) where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury"; (2) where a local government failed to train employees in a manner that was so inadequate the "policymakers of the city can reasonably be said to have been deliberately indifferent to the need"; or (3) where "an official with final policy-making authority" was the tort-feasor or ratified a subordinate's unconstitutional action. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (citations omitted). Here, Herrera[2] alleges the first two theories of liability are applicable and caused the injury to plaintiffs. (Doc. 15 at 7-8, 15-16.)

A custom of conduct may give rise to *Monell* liability when the conduct constitutes standard operating procedure; to do so, it must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). A *Monell* claim based on inadequate training may succeed "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" yet choose to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Accordingly, like for the first theory of liability, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" in training. *Id.* at 62 (citation omitted); *see also Rodriguez*, 891 F.3d at 803 (evidence of widespread practice shows deliberate indifference to constitutional violations).

To support the theory of a pattern or practice of excessive force, Herrera includes allegations that the U.S. Department of Justice ("DOJ") investigated the department's use of force and found exactly such a longstanding, consistent practice of "unjustified deadly force and other types of force." (Doc. 15 at 8-10.) That investigation relied upon incidents

---

[2] Only Herrera has a potential *Monell* claim against the City of Phoenix because A.T.T. and A.T. have not properly stated underlying violations of their constitutional rights. *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 742 (9th Cir. 2020) ("there can be no *Monell* claim based on excessive force without an underlying constitutional violation by the officers").

similar to those alleged by Herrera, including using force where no force is necessary, failing to attempt de-escalation, and engaging in specific tactics like "tackling . . . regardless of the crime or the threat." (Doc. 15 at 10.) Separate from the DOJ report, Herrera lists news reports and legal cases describing incidents of lethal and non-lethal excessive force. (Doc. 12-13.) Defendants argue all of these incidents are too dissimilar to Herrera's case for various reasons and challenge the DOJ report as both factually unfounded and insufficiently specific. (Doc. 23 at 14; *see* Doc. 22 (motion to strike portions of complaint on same grounds).) To rely on such a report, a plaintiff must indeed show it has a relationship to the facts and claims alleged in the complaint. *See, e.g., Gerow v. U.S. Dep't of Just.*, No. CV-23-01059-PHX-DGC, 2024 WL 4528167, at *4 (D. Ariz. Oct. 17, 2024) (dismissing claim founded on DOJ report findings that did not relate to subject matter of complaint); *Frank v. City of Ville Platte*, No. 6:17-CV-01351, 2019 WL 1064261, at *5 (W.D. La. Mar. 6, 2019) (DOJ report had "no persuasive authority" related to plaintiff's claims where "[t]he situation presented [was] substantially different from the focus of the DOJ's investigation"). When a plaintiff lists prior incidents of relevant conduct to support the conduct's frequency and consistency, those examples must be detailed enough for a court to determine the incidents are similar to the one at issue so as to place policymakers on notice of a problematic pattern or practice. *See Ames v. City of Tempe*, No. CV-20-02102-PHX-DWL, 2021 WL 5578868, at *4 (D. Ariz. Nov. 29, 2021); *Connick*, 593 U.S. at 61.

Herrera specifically links incidents from the news and from the DOJ report to her own facts, unlike the plaintiff in *Gerow*. 2024 WL 4528167, at *4. She names a case where a man was allegedly assaulted when he did not immediately comply with an officer's order, like here; a case where officers used non-lethal force on a man where no force was needed, like here; and a case where officers tackled a man where no force was needed, like here. (Doc. 15 at 13.) And unlike in *Frank*, where the DOJ report studied a practice of warrantless arrests but the plaintiff was arrested pursuant to a warrant, Herrera's DOJ report allegations describe a department whose unjustified use of force was common

custom in cases very similar to her own. *Frank*, 2019 WL 1064261, at *5. Specifically, she points to the report's finding of a pattern of use of force where no threat was presented and where no de-escalation appeared to take place, both of which sufficiently tie to her own factual allegations (Doc. 15 at 9-11). *Cf. Gerow*, 2024 WL 4528167, at *4 (plaintiff did not point to any finding in DOJ report which related to his claims). And because the portions of the DOJ report are directly relevant to Herrera's *Monell* claim and evidentiary objections "are typically a non-issue at the pleading stage," the motion to strike is denied for the same reasons. *See Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 894 (N.D. Cal. 2023) (motions to strike disfavored "if there is any doubt whether the allegations in the pleadings might be relevant"); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 491-92 (C.D. Cal. 2014) (denying motion to strike allegations in complaint based on "unripe" evidentiary objections).

Meanwhile, to support the improper training theory of *Monell* liability, the complaint alleges training-specific facts, including the DOJ's finding that the department "trained its officers to believe that the use of force constitutes de-escalation" and actively encouraged officers to use force regardless of the subject's threat level. (Doc. 15 at 10.) That the police department's training program shifted in response to this investigation and report (after the incident at issue) supports Herrera's theory that policymakers were on notice of the training failures. (Doc. 15 at 11.) And as discussed above, the complaint's listed incidents by untrained employees are sufficiently similar to the incident at issue to show deliberate indifference by policymakers. *Connick*, 563 U.S. at 61.

Taking the above facts in her favor, Herrera has sufficiently pleaded the elements of a *Monell* claim at this stage.

### E. Conclusion

The motion to dismiss is denied in part. Herrera has plausibly pleaded a claim for constitutional violations under the Fourth and Fourteenth Amendments against Van Meter, Sanchez, and the City of Phoenix. But plaintiffs have not alleged facts which could support excessive force claims on behalf of A.T. and A.A.T. or claims against Feher. And

defendants Van Meter, Sanchez, and Feher (to the extent Herrera sufficiently pleaded a claim against him) have qualified immunity for the unlawful seizure claim. The motion to dismiss is granted as to those claims with leave to amend.

**IT IS ORDERED** the Motion to Dismiss (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**. If plaintiffs wish to file an amended complaint consistent with the limited leave to amend granted in this order, they must do so no later than December 8, 2025. If no amended complaint is filed by that date, defendants shall answer the current complaint no later than December 12, 2025.

**IT IS FURTHER ORDERED** the Motion to Strike (Doc. 22) is **DENIED**.

Dated this 21st day of November, 2025.

_Honorable Krissa M. Lanham_
United States District Judge