**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexandra Herrera, | No. CV-25-01360-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Plaintiff Alexandra Herrera alleges Phoenix police officers used excessive force and unlawfully seized her, violating her rights under the Fourth and Fourteenth Amendments. (Doc. 40 at 13-16.) The court previously granted in part a motion to dismiss and permitted Herrera to amend her unreasonable seizure claim. (Doc. 36 at 18.) She did so, and individual officers Alexander Van Meter and Marc Sanchez once again moved to dismiss that claim. (Doc. 42.) Their motion is granted, without leave to amend a third time.

## I.   Plaintiffs' Factual Allegations

In April 2023, Herrera was walking home from a neighborhood gathering with her then-ten-month-old daughter when she saw her then-two-year-old son standing with a "random stranger" and a non-party Phoenix police officer. (Doc. 40 at 2-3.) Defendant officers Van Meter and Sanchez "arrived on scene and transported [Herrera]" and both children to their apartment complex. (Doc. 40 at 3.) Herrera and her children then walked to Herrera's sister's apartment on the floor beneath Herrera's. (Doc. 40 at 3.) Van Meter and Sanchez followed her into that apartment "under the guise of a welfare check." (Doc.

40 at 3.) Hererra, holding her children, "began slowly walking away" to return to her apartment. (Doc. 40 at 3.) Sanchez yelled at her to stop and the two officers "began to chase" Herrera into an alley behind the apartment building, enclosed by a chain link fence. (Doc. 40 at 3.)

Once in this "dark corridor," Van Meter grabbed Herrera and instructed her to let go of her children, then struck her in the face "and forced her to release her minor daughter to" Sanchez. (Doc. 40 at 3-4.) While Herrera still held her son, Van Meter "without any warning . . . threw [Herrera] to the ground and twisted her head" until she released her son. (Doc. 40 at 4.) Subsequently, while Herrera was lying face-down on the ground, Van Meter pressed his knee and body weight into Herrera's back and handcuffed her, then "tore off" her shirt, leaving her in a bra and Spandex bicycling shorts. (Doc. 40 at 4.) Meanwhile, Sanchez held Herrera's children, who were screaming. (Doc. 40 at 4.)

Herrera was then placed in the back of the police car. (Doc. 40 at 4.) She was kept there alone for around three hours until her uncle arrived, at which point Herrera and her children were released. (Doc. 40 at 4.) Herrera alleges she "was never formally arrested, never *Mirandized*, did not receive a citation nor a ticket, and only Defendant Van Meter was willing to provide his badge number." (Doc. 40 at 5.) She also asserts any probable cause that may have existed had dissipated by the time she was placed in the car. (Doc. 40 at 6.)

Herrera alleges she suffered significant physical and emotional injuries from the events. (Doc. 40 at 5.) She filed this lawsuit naming as defendants Van Meter, Sanchez, another officer, and the City of Phoenix. (Doc. 15.) After the court granted in part a motion to dismiss, Herrera filed a Second Amended Complaint ("SAC") alleging claims only against Van Meter, Sanchez, and the City of Phoenix. (Doc. 40.) Van Meter and Sanchez moved to dismiss the amended unreasonable seizure claim against them. (Doc. 42.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.    Analysis

Herrera's amended complaint alleges her three-hour detention in the police car constituted an unreasonable seizure because the officers did not have probable cause to arrest her, or any probable cause dissipated once she was reunited with her children (before being placed in the car). (Doc. 40 at 6.) Defendants argue they had probable cause and even if they did not, they are entitled to qualified immunity for this claim.

A person is seized "when the officer by means of physical force or show of authority terminates or restrains [the person's] freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007). To determine the constitutionality of a seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (simplified). To avoid being an unlawful seizure, an arrest therefore requires "probable cause to believe [the arrestee] committed a crime." *Id.* at 7. But probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In other words, officers have probable cause when "under the totality of circumstances known . . . a reasonably prudent person would have concluded that there was a fair probability" the defendant committed a crime. *Id.* (quoting

*United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

As this court previously suggested (Doc. 36 at 8) and the parties agree (Docs. 42 at 5-6; 47 at 4), Herrera's detention in the patrol car was an arrest. Police officers may detain an arrestee for over three hours. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (arrestee may be detained for 48 hours before probable cause hearing is required); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (discussing post-arrest "extended restraint[s] of liberty"). Accordingly, Herrera's detention in the police car did not violate her rights so long as her arrest was supported by probable cause. *See Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

Because police officers generally benefit from qualified immunity, Herrera must plausibly plead not only that there was no probable cause to arrest her, but that it was not "*reasonably arguable* that there was probable cause for arrest." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). That is, she must plead the lack of probable cause in this context was so clearly-established a reasonable officer would have known the arrest was unlawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (for qualified immunity issue, courts analyze the relevant constitutional right "in light of the specific context of the case"). It is the plaintiff's burden to prove the right was clearly established, *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991), and to describe its contours clearly enough to show that in the moment, "a reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (simplified).

Defendants argue a reasonable person, after seeing Herrera's toddler on the street at 10 p.m. with a person Herrera describes as a "random stranger" while she walked back from a party (Doc. 40 at 2-3), could have believed probable cause existed to arrest Herrera for child endangerment under A.R.S. § 13-3623. (Doc. 42 at 6-7.) That statute prohibits persons with care or custody of child from, under circumstances likely to cause death or

serious injury, causing or permitting a child to be placed in situation where the child's person or health is endangered. *See State v. Jones*, 937 P.2d 310, 314 (Ariz. 1997) (discussing statute's elements); *State v. Greene*, 811 P.2d 356, 360 (Ariz. Ct. App. 1991) (circumstances "likely" to cause death or serious physical injury require probability, not mere possibility, of that harm). To avoid qualified immunity, "existing precedent must place" it "beyond debate" that officers lacked probable cause to arrest Herrera for violating this statute. *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (simplified); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (qualified immunity applied where officer made reasonable mistake in concluding probable cause existed). Herrera has not shown it was beyond debate that her arrest was unlawful.

Case-law suggests a reasonable officer may view the discovery of an unsupervised toddler on a public street at 10 p.m. while its parent attended a neighborhood get-together as cause to believe that parent had permitted her toddler to be placed in a situation likely to produce serious physical injury. *See State v. Snell*, No. 2 CA-CR 2015-0383, 2016 WL 2753858, at *1 (Ariz. Ct. App. May 11, 2016) (upholding A.R.S. § 13-3623 misdemeanor conviction for mother who left child alone in car for 30 to 40 minutes); *Riggs v. Nye Cnty.*, No. 217CV02627APGVCF, 2019 WL 1300074, at *4 (D. Nev. Mar. 21, 2019) ("no reasonable jury could find the detectives lacked probable cause for the arrest" where parent left children unsupervised at pool for three minutes); *Schleifer v. City of Charlottesville*, 963 F. Supp. 534, 542 (W.D. Va. 1997) (finding "[c]hildren are peculiarly vulnerable to the dangers of the night"). An arrest is permissible even when there is only probable cause to believe an individual committed a "very minor criminal offense" in an officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). That the officers waited some time between discovering Herrera's unsupervised toddler and arresting her is not sufficient to defeat probable cause. *See also Santana v. City of Westminster*, No. SACV152058DOCKESX, 2017 WL 11634525, at *6 (C.D. Cal. June 5, 2017) (holding it irrelevant to qualified immunity analysis that officer waited hours to arrest suspect after learning of facts giving rise to probable cause).

Herrera also argues her seizure was unlawful because "[a]ny probable cause to seize [her] dissipated once she was reunited with both of her minor children and she began walking back to her apartment." (Doc. 40 at 6, 16.) Herrera is correct that a person must be released from custody—or not arrested in the first place—after probable cause has dissipated. But finding dissipation requires new information that indicates a "less than fair probability" the defendant has committed a crime. *Lopez*, 482 F.3d at 1073; *see United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005). The SAC only offers the bare conclusion that probable cause had dissipated; neither it nor Herrera's briefing provide facts suggesting any new information was found between the discovery of Herrera's lost toddler and her arrest that reduced the probability of child endangerment having happened earlier that evening. And she does not cite, nor does there appear to be, case-law establishing probable cause dissipates merely because the alleged criminal activity has ceased. *See Lalonde v. City of Ogdensburg*, No. 8:22-CV-00164 (LEK/DJS), 2026 WL 879705, at *17 (N.D.N.Y. Mar. 31, 2026) ("probable cause is present when there is sufficient reason to belief that an individual has committed an offense, even if the criminal activity has ceased"). In other words, the reunion with her children did not change whether the officers had reason to believe Herrera had earlier endangered her child.

Finally, though Herrera need not plead "a case directly on point" to show her right was clearly established, she must show precedent has placed that question "beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). But the SAC only alleges there was no probable cause and it is clearly established arrests require probable cause—it does not describe the contours of the right *in this context*, and Herrera does not cite case-law that touches on even similar facts. *See Romero*, 931 F.2d at 627; *Mendoza*, 27 F.3d at 1361.

Accordingly, Herrera does not carry her burden to show her right to be free from arrest in this set of circumstances was clearly-established. A reasonable officer could have believed probable cause existed at the time of her arrest, and neither the facts alleged nor the case-law suggests it had dissipated.

Herrera seeks leave to amend a third time to repeat her conclusion that no probable

cause existed in more places in the complaint. (Docs. 47 at 13; 47-1 at 3-4, 6, 14-15.) But she has already amended this claim, and her proposed Third Amended Complaint does not remedy the legal issues with it. Further leave to amend is therefore denied. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (affirming denial of leave to amend as futile where prior district court order put plaintiffs "on notice . . . of the same defects" that led to dismissal of amended complaint); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted).

**IT IS ORDERED** the Partial Motion to Dismiss (Doc. 42) is **GRANTED**.

**IT IS FURTHER ORDERED as follows**:

The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed **within 2 weeks of the date of this order**. It is the responsibility of plaintiff(s) to initiate the Rule 26(f) meeting and prepare the Joint Case Management Report. Defendant(s) shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.

The Joint Case Management Report shall contain the following information in separately-numbered paragraphs.

1. The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report;

2. A list of all parties in the case, including any parent corporations or entities (for recusal purposes);

3. Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared;

4. A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings;

5. The names of any parties not subject to the court's personal (or *in rem*)

jurisdiction;

6.  A description of the basis for the court's subject matter jurisdiction, citing specific jurisdictional statutes. If jurisdiction is based on diversity of citizenship, the report shall include a statement of the citizenship of every party and a description of the amount in dispute. *See* 28 U.S.C. §1332;

7.  A short statement of the nature of the case (no more than three pages), including a description of each claim, defense, and affirmative defense;

8.  A listing of contemplated motions and a statement of the issues to be decided by those motions;

9.  Whether the case is suitable for reassignment to a United States Magistrate Judge for all purposes or suitable for referral to a United States Magistrate Judge for a settlement conference;

10. The status of any related cases pending before this or other courts;

11. A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced;

12. A discussion of any issues relating to claims of privilege or work product;

13. A discussion of necessary discovery, which should take into account the December 1, 2015 amendments to Rule 26(b)(1) and should include:

   a.  The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;

   b.  Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;

   c.  The number of hours permitted for each deposition. The parties also should consider whether a total number of deposition hours should be set in the case, such as twenty total hours for plaintiffs and twenty total hours for defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in

each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to be covered with the witnesses;

14. Proposed deadlines for each of the following events. In proposing deadlines, the parties should keep in mind the Case Management Order will contain deadlines to govern this case and once the dates have been set the court will vary them only upon a showing of good cause. A request by counsel for extension of discovery deadlines in any case that has been pending more than two years must be accompanied by a certification stating the client is aware of and approves of the requested extension. The court does not consider settlement talks or the scheduling of mediations to constitute good cause for an extension. The parties must propose the following:

   a. A deadline for the completion of fact discovery, which will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all fact discovery must be *completed*. Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the court will not entertain discovery disputes after this deadline;

   b. Dates for full and complete expert disclosures and rebuttal expert disclosures, if any;

   c. A deadline for completion of all expert depositions;

   d. A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case;

   e. A deadline for filing dispositive motions;

   f. Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a

*Markman* (patent claim construction) hearing;

    g.    A date by which the parties shall have engaged in face-to-face good faith settlement talks;

    h.    Whether a jury trial has been requested and whether the request for a jury trial is contested, setting forth the reasons if the request is contested;

    i.    Any other matters that will aid the court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1;

15. A statement indicating whether the parties would prefer that the court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why the conference would be helpful.

**IT IS FURTHER ORDERED** the parties shall file a proposed Case Management Order containing all the proposed dates at the same time they file the Rule 26(f) Case Management Report. The proposed Case Management Order must also be emailed in Word format to Lanham_Chambers@azd.uscourts.gov.

Dated this 22nd day of May, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**

- 10 -